Jane M. Bolin, J.
The respondent appears before the court on a petition alleging that on August 10, 1962 at 11:15 p.m., in the Boe * apartment, he stabbed Robert Roe * in the chest causing his death.
The body of Bobert Boe, about 30 years old, was found by the police on August 14 lying on the floor of his apartment. The coroner’s report indicated his death had been caused by a penetrating stab wound of the chest, sternum and aorta.
Two days after the discovery of the body, about 11 o’clock in the morning, the police apprehended the respondent,, a 13-year-old child, with no juvenile delinquency record, while he was on the street in front of his home. The child’s parents were not notified at this time, in fact not until sometime later in the day.
After apprehension the child, in the company of several police officers, was driven to a parking lot where he was questioned. About noon he was taken to the police station where he was *235 questioned continuously until about 6:00 p.m. Throughout he maintained his innocence of the stabbing.
The child’s mother arrived at the station house sometime during the afternoon but the police continued to question the child without the mother in the room. The child made an ‘‘ admission ’ ’ about 6:00 p.m., after which the mother was admitted to the room where the child was detained.
The child testified he had not been struck at any time during his detention, but that he had made the admission after having been told by the police that he would be hit if he did not tell the truth. The child had not been offered any food during the seven hours of interrogation.
At the hearing no evidence beyond the “ confession ” was offered by the detective petitioner implicating the child. The question the court must determine is whether the confession was voluntary since an 11 involuntary ‘ confession ’ is, by its very nature, evidence of nothing.” (People v. Valletutti, 297 N. Y. 226, 231.)
Section 724 of the Family Court Act provides that when a peace officer takes a child into custody he shall“ immediately ” notify the parent and then he shall either (a) release the child on the written promise of the parent to produce the child in court at a certain time or (b) forthwith take the child directly and “ roithout Ms first being taken to the police station house ” to the family court or (c) take the child to a designated place for the reception of children. (Italics supplied.) Subdivision 4 of section 5.0 of chapter 9 of the Rules and Procedures of the New York Police Department also provides that a child shall not be taken to a station house (except for a child of 15 charged with a commission of an act, which, if committed by an adult, would be punishable by death or life imprisonment). One of the purposes of this prohibition is to protect the child not only from contact with adult suspects but also from the frightening atmosphere of a station house.
The respondent’s detention in a station house was intimidating and his unremitting interrogation by the police for seven hours was oppressive and overwhelming. The will of a 25-year-old man after eight hours of continuous police questioning was found in Spano v. New York (360 U. S. 315, 320-321) to have been overborne by official pressure and fatigue. Mr. Chief Justice Wabbee", writing for the court in that case, proceeded to state: ‘ ‘ The abhorrence of society to the use of involuntary confessions does not turn alone on their inherent untrustworthiness. It also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life *236 and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.”
The United States Supreme Court has repeatedly emphasized the responsibility of the police to protect the fundamental rights of adult citizens in custody or under detention. (Malinski v. New York, 324 U. S. 401; Spano v. New York, supra; Reck v. Pate, 367 U. S. 433.) The Family Court, having exclusive jurisdiction over children the age of this respondent, must be ever vigilant to accentuate this grave, or even graver, responsibility where citizens of extreme youth are concerned. (Gallegos v. Colorado, 370 U. S. 49; Haley v. Ohio, 332 U. S. 596.) “ What transpired would make us pause for careful inquiry if a mature man were involved. And when, as here, a mere child — an easy victim of the law — is before us, special care in scrutinizing the record must be used. Age 15 is a tender and difficult age for a boy of any race. He cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. This is the period of great instability which the crisis of adolescence produces. A 15-year-old lad, questioned through the dead of night by relays of police, is a ready victim of the inquisition. Mature men possibly might stand the ordeal from midnight to 5 a.m. But we cannot believe that a lad of tender years is a match for the police in such a contest. He needs counsel and support if he is not to become the victim first of fear, then of panic. He needs someone on whom to lean lest the overpowering presence of the law, as he knows it, crush him. No friend stood at the side of this 15-year-old boy as the police, working in relays, questioned him hour after hour, from midnight until dawn. No lawyer stood guard to make sure that the police went so far and no farther, to see to it that they stopped short of the point where he became the victim of coercion. No counsel or friend was called during the critical hours of questioning. A photographer was admitted once this lad broke and confessed. But not even a gesture towards getting a lawyer for him was ever made. ” (Haley v. Ohio, pp. 599-600, supra.)
I find that the respondent’s confession, made after seven hours of continuous police interrogation, in the absence of his parents or counsel, while in a police station house, was not voluntary and consequently not reliable and not entitled to credit. This combination of circumstances where a child is involved is inherently coercive and the methods used in obtaining this “ confession ” violated the Fourteenth Amendment of the *237 United States Constitution. Since the “confession” was the sole evidence of guilt offered at the hearing, the petition has not been sustained by a preponderance of credible evidence. Accordingly, petition is dismissed.